No. 24-14257

# In the United States Court of Appeals
# For the Eleventh Circuit

LEQUITA WHITFIELD, et al.,

*Plaintiff-Appellant,*

v.

SELENE FINANCE LP

*Defendant.*

Appeal from the United States District Court
for the Middle District of Georgia
Case No. 5:24-cv-00153
(Hon. Tilman E. Self, III)

## PLAINTIFF-APPELLANT'S OPENING BRIEF

Scott C. Harris
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
900 W. Morgan St.
Raleigh, NC 27603
(919) 600-5000

Lucia Goin
Leah M. Nicholls
PUBLIC JUSTICE
1620 L St. NW, Ste. 630
Washington, DC 20036
(202) 470-1061

*Counsel for Plaintiff-Appellant*

*Whitfield v. Selene Finance*, No. 24-14257

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 11th Cir. Rules 26.1-1(a)(2), 26.1-2, and 26.1-3, Plaintiff-Appellant Lequita Whitfield, on behalf of herself and all those similarly situated, submits this certificate of interested persons and corporate disclosure statement and certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that Plaintiff believes have an interest in the outcome of this particular appeal, including subsidiaries, conglomerates, affiliates, parent corporations:

Accardi, Sara Dunn

Balsam, Hugh

Bradley Arant Boult Cummings, LLP

Cannon, Hon. Aileen M.

Chastain, R. Aaron

Cohen, Jonathan Betten

Cruz, Clarissa

Dunn, S. Michael

Flynn, Steven J.

Goin, Lucia

C-1 of 3

*Whitfield v. Selene Finance*, No. 24-14257

Gwaltney, Karl

Halvorson, Erik

Harris, Scott C.

Heldman, Scott

Herbert, Brendan I.

Lembke, Matthew Howard

Maginnis, Edward H.

Maginnis Howard

Martin, Katrina

Martin, Robert Allan

Milberg Coleman Bryson Phillips Grossman, PLLC

McCabe, Ryon M.

Nicholls, Leah M.

Perdew, Phillip Russell

Public Justice

Robinson, Kathryn

Selene Finance LP

Self, Hon. Tillman E.

Sigmon, Mark R.

*Whitfield v. Selene Finance*, No. 24-14257

Troutman Pepper Locke, LLP

Whitfield, Lequita

Plaintiff is not aware of any publicly traded company or corporation that has an interest in the outcome of this appeal.

Date: March 13, 2025          Respectfully submitted,

<u>/s/ *Lucia Goin*</u>
Lucia Goin

*Counsel for Plaintiff-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(1) and 11th Circuit Rule 28-1(c), Appellant respectfully requests oral argument in this case. This case presents questions concerning Article III standing, misleading representations challenged under debt-collection law, and the scope and applicability of contractual exhaustion requirements enforced by non-signatories. Oral argument will assist the Court in resolving these important legal issues.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................ C-1

Statement Regarding Oral Argument ........................................................i

Table of Citations .....................................................................................iv

Statement of Jurisdiction.........................................................................1

Statement of the Issues............................................................................2

Introduction...............................................................................................3

Statement of the Case ..............................................................................6

    I.    Factual Background.................................................................6

    II.    Procedural History ...............................................................11

Standard of Review .................................................................................13

Summary of Argument............................................................................14

Argument..................................................................................................16

    I.    Ms. Whitfield Sufficiently Alleged Article III Standing.......16

        A.    Ms. Whitfield Suffered Concrete Injuries....................17

        B.    Ms. Whitfield's Injuries are Consistent with Harms Traditionally Recognized. ...........................................22

        C.    Debt-Collection Law Directly Targets Non-Monetary Harms.................................................................28

        D.    If this Court Affirms the District Court's Standing Analysis, it Should Vacate the Rest of the Court's Opinion. .................................................................30

II.     The Least Sophisticated Consumer Would be Misled by the Misrepresentations in Selene's Letter. ................................ 32

III.    The Notice-and-Cure Provision Does Not Bar Ms. Whitfield's Claims .......................................................................... 39

        A.    Selene is not an assign of the lender. ......................... 41

        B.    Even if Selene is a valid assign, the notice-and-cure provision does not apply to assigns. ........................... 47

        C.    Ms. Whitfield's claims do not arise out of the mortgage contract. .................................................................. 48

        D.    Judicial estoppel prevents Selene from arguing that it is a party or assign to the agreement. ......................... 55

        E.    Enforcement of the notice-and-cure provision is contrary to public policy. ............................................. 58

Conclusion ................................................................................ 61

# TABLE OF CITATIONS

**Cases**

*Allaire v. Whitney,*
  1 Hill 484 (N.Y. Sup. Ct. 1841)........................................................26

*Amstell, Inc. v. Bunge Corp.,*
  443 S.E.2d 706 (Ga. Ct. App. 1994)...............................................41

*Ashcroft v. Mattis,*
  431 U.S. 171 (1977).........................................................................32

*Aubee v. Selene Fin., L.P.,*
  56 F.4th 1 (1st Cir. 2022)................................................................56

*Avila v. Riexinger & Assocs., LLC,*
  817 F.3d 72 (2d Cir. 2016) ........................................................ 35, 37

\* *Bahamas Sales Associate, LLC v. Byers,*
  701 F.3d 1335 (11th Cir. 2012)................................................ 49, 51

*Ballou v. Farnum,*
  11 Allen 73 (Mass. 1865)................................................................23

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
  450 U.S. 728 (1981).........................................................................58

*Bassett v. Credit Bureau Servs., Inc.,*
  60 F.4th 1132 (8th Cir. 2023) ........................................................24

*Belcher v. Ocwen Loan Servicing, LLC,*
  No. 8:16-CV-690-T-23AEP, 2016 WL 7243100 (M.D. Fla.
  Dec. 15, 2016)..................................................................................53

*Bell v. Sasser,*
  520 S.E.2d 287 (Ga. Ct. App. 1999)...............................................46

\* *Bishop v. Ross Earle & Bonan, P.A.,*
  817 F.3d 1268 (11th Cir. 2016).......................................................36

*Boaz v. FedEx Customer Info. Servs.*,
   725 F.3d 603 (6th Cir. 2013)......................................................59

*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945)..................................................................58

*Brown v. Card Service Ctr.*,
   464 F.3d 450 (3d Cir. 2006) .......................................................37

*Caceres v. McCalla Raymer, L.L.C.*,
   755 F.3d 1299 (11th Cir. 2014).................................................33

*Calogero v. Shows, Cali & Walsh, L.L.P.*,
   95 F.4th 951 (5th Cir. 2024) ......................................................24

*Castle v. Sangamo Weston, Inc.*,
   837 F.2d 1550 (11th Cir. 1988).................................................32

*Chafin v. Chafin*,
   568 U.S. 165 (2013)..................................................................32

*Cole v. Atlanta & W.P.R. Co.*,
   31 S.E. 107 (Ga. 1897) .............................................................24

*Colon v. Nationstar Mortg., LLC*,
   No. 1:15-CV-22961-UU, 2015 WL 7422598 (S.D. Fla. Nov.
   17, 2015) ..................................................................................53

*Cooper v. Atl. Credit & Fin. Inc.*,
   822 F. App'x 951 (11th Cir. 2020)........................................20, 21

*Corbett v. Transportation Sec. Admin.*,
   930 F.3d 1225 (11th Cir. 2019).................................................31

*Cross v. Equityexperts.org, LLC*,
   No. 19-14067, 2021 WL 5279412 (11th Cir. Nov. 12, 2021)..............25

*Crossley v. Lieberman*,
   90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir.
   1989)........................................................................................29

v

*Cruz v. Selene Fin., LP*,
   No. 23-14297, 2024 WL 5374001 (S.D. Fla. Nov. 21, 2024) .............. 43

*Desimone v. Select Portfolio Servicing, Inc.*,
   No. 20-CV-3837, 2024 WL 4188851 (E.D.N.Y. Sept. 13,
   2024) ....................................................................................................... 54

*Ellerbee v. Hawes*,
   546 S.E.2d 332 (Ga. Ct. App. 2001) .................................................... 42

*In re Estate of McKitrick*,
   326 Ga. App. 702 (2014) ...................................................................... 48

*First Data POS, Inc. v. Willis*,
   546 S.E.2d 781 (Ga. 2001) ................................................................... 48

*Foster v. Green Tree Servicing, LLC*,
   No. 8:15-CV-1878-T-27MAP, 2017 WL 5151354 (M.D. Fla.
   Nov. 3, 2017) ........................................................................................ 52

*Friends of the Everglades v. U.S. E.P.A.*,
   699 F.3d 1280 (11th Cir. 2012) ........................................................... 31

*FTC v. Standard Educ. Soc'y*,
   302 U.S. 112 (1937) .............................................................................. 34

*Gadelhak v. AT&T Servs., Inc.*,
   950 F.3d 458 (7th Cir. 2020) ......................................................... 23, 27

*Gale v. First Franklin Loan Servs.*,
   701 F.3d 1240 (9th Cir. 2012) ............................................................. 46

*Garay v. Select Portfolio Servicing Inc.*,
   No. 1:19-CV-23323-JLK, 2020 WL 10823745 (S.D. Fla.
   Aug. 7, 2020), *report and recommendation adopted*, No.
   1:19-CV-23323-JLK, 2020 WL 10823759 (S.D. Fla. Aug.
   31, 2020) ................................................................................................ 53

*Gerber v. First Horizon Home Loans Corp.*,
   No. C05-1554P, 2006 WL 581082 (W.D. Wash. Mar. 8,
   2006) ....................................................................................................... 54

*Godwin v. Mizpah Farms, LLLP*,
766 S.E.2d 497 (Ga. Ct. App. 2014) .................................................. 46

*Green-Cooper v. Brinker Int'l Inc.*,
73 F.4th 883 (11th Cir. 2023) ......................................................... 17

*Harrington v. Fay Servicing, LLC*,
No. 18-C-06467, 2019 WL 4750140 (N.D. Ill. Sept. 30,
2019) ....................................................................................... 54

*Holzman v. Malcolm S. Gerald & Assoc., Inc.*,
920 F.3d 1264 (11th Cir. 2019) ....................................................... 33

*Huber v. Simon's Agency, Inc.*,
84 F.4th 132 (3d Cir. 2023) ............................................................ 25

*Jacobs v. Inhabitants of Bangor*,
16 Me. 187 (1839) ....................................................................... 26

*Jeter v. Credit Bureau, Inc.*,
760 F.2d 1168 (11th Cir. 1985) ....................................................... 34

*Johnson v. Specialized Loan Servicing, LLC*,
No. 3:16–cv–178–J–MCR, 2017 WL 4877450 ................................... 43

*Kuehn v. Cadle Co.*,
335 F. App'x 827 (11th Cir. 2009) .................................................... 37

*Lamothe v. Freedom Mortgage Corp.*,
No. 18-cv-61448, 2018 WL 5631172 (S.D. Fla. Oct. 31,
2018) ....................................................................................... 53

*Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,
Penn.*,
609 F. App'x 578 (11th Cir. 2015) .................................................... 49

* *LeBlanc v. Unifund CCR Partners*,
601 F.3d 1185 (11th Cir. 2010) .......................................... 34, 35, 38

*Logan v. MGM Grand Detroit Casino*,
939 F.3d 824 (6th Cir. 2019) .......................................................... 58

*Lord Abbett Mun. Income Fund, Inc. v. Tyson*,
 671 F.3d 1203 (11th Cir. 2012) ........................................................ 13

\* *Losch v. Nationstar Mortgage, LLC*,
 995 F.3d 937 (11th Cir. 2021) .......................................................... 18

*LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*,
 17 F. Supp. 3d 1289 (N.D. Ga. 2014) .............................................. 41

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ........................................................................ 20

*Mace v. Van Ru Credit Corp.*,
 109 F.3d 338 (7th Cir. 1997) .......................................................... 60

*McShannock v. JP Morgan Chase Bank N.A.*,
 354 F. Supp. 3d 1063 (N.D. Cal. 2018), *rev'd on other
 grounds*, 976 F.3d 881 (9th Cir. 2020) ............................................ 54

*Mills v. Select Portfolio Servicing, Inc.*,
 No. 18-CV-61012, 2018 WL 5113001 (S.D. Fla. Oct. 19,
 2018) .............................................................................................. 44

*Minnifield v. Johnson & Freedman, LLC*,
 448 F. App'x 914 (11th Cir. 2011) .................................................. 25

*Mourad v. Homeward Residential, Inc.*,
 517 F. App'x. 360 (6th Cir. 2013) .................................................... 46

*Muransky v. Godiva Chocolatier, Inc.*,
 979 F.3d 917 (11th Cir. 2020) (en banc) .................................... 21, 23

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) .................................................................. 55, 57

*Patrick v. Teays Valley Trustees, LLC*,
 No. 3:12–CV–39, 2012 WL 5993163 (N.D. W.Va. Nov. 30,
 2012) .............................................................................................. 44

*Peck v. Neil*,
 19 F. Cas. 79 (Ohio C.C. 1842) ...................................................... 26

\* *Pedro v. Equifax, Inc.*,
868 F.3d 1275 (11th Cir. 2017) ........................................................ 19

\* *Phillips v. Ocwen Loan Servicing, LLC*,
92 F. Supp. 3d 1255 (N.D. Ga. 2014) ............................................... 44

\* *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*,
942 F.3d 1200 (11th Cir. 2019) ................................................... 19, 34

*Powell v. Thomas*,
643 F.3d 1300 (11th Cir. 2011) ........................................................ 14

*Richards v. NewRez LLC*,
No. 20-CV-1282, 2021 WL 1060286 (D. Md. Mar. 18, 2021) ............. 54

*Ridgewells Caterer, Inc. v. Nelson*,
688 F. Supp. 760 (D.D.C. 1988) ....................................................... 28

\* *Rivas v. Midland Funding, LLC*,
842 F. App'x 483 (11th Cir. 2021) ................................................... 19

*Robinson v. Managed Accts. Receivables Corp.*,
654 F. Supp. 2d 1051 (C.D. Cal. 2009) ............................................. 27

*S. Telecom, Inc. v. TW Telecom of Georgia L.P.*,
741 S.E.2d 234 (Ga. Ct. App. 2013) ............................................ 47, 57

*San Antonio Traction Co. v. Crawford*,
71 S.W. 306 (Tex. Civ. App. 1902) ................................................... 24

*Schmidt v. Wells Fargo Home Mortgage*,
No. 3:11–CV–059, 2011 WL 1597658 (E.D. Va. Apr. 26,
2011), *aff'd*, 482 F. App'x. 868 (4th Cir. 2012) ............................ 43, 54

*Scott v. Cushman & Wakefield of Ga., Inc.*,
547 S.E.2d 794 (Ga. 2001) ............................................................... 41

*Shields v. Pro. Bureau of Collections of Maryland, Inc.*,
55 F.4th 823 (10th Cir. 2022) .......................................................... 27

*Shugart v. Ocwen Loan Servicing, LLC*,
747 F. Supp. 938 (S.D. Ohio 2010) .................................................. 44

*Silvester v. Selene Fin., LP,*
　No. 18-CV-02425, 2021 WL 861080 (S.D.N.Y. Mar. 8,
　2021)................................................................................................56

*Slater v. U.S. Steel Corp.,*
　871 F.3d 1174 (11th Cir. 2017)...............................................55, 57

\* *Spokeo, Inc. v. Robins,*
　578 U.S. 330 (2016).........................................................17, 22, 28

*St. Breux v. U.S. Bank, Nat. Ass'n,*
　919 F. Supp. 2d 1371 (S.D. Fla. 2013)......................................53

*Steel Co. v. Citizens for a Better Env't,*
　523 U.S. 83 (1998).......................................................................31

*Taub v. World Fin. Network Bank,*
　950 F. Supp. 2d 698 (S.D.N.Y. 2013)........................................54

*Taylor v. Polhill,*
　964 F.3d 975 (11th Cir. 2020).....................................................13

*Telecom Italia, SpA v. Wholesale Telecom Corp.,*
　248 F.3d 1109 (11th Cir. 2001)...................................................49

*Thome v. Sayer L. Grp., P.C.,*
　567 F. Supp. 3d 1057 (N.D. Iowa 2021).....................................24

\* *Toste v. Beach Club at Fontainebleau Park Condominium
　Association,*
　No. 21-14348, 2022 WL 4091738 (11th Cir. Sept. 7, 2022)...............19

\* *TransUnion LLC v. Ramirez,*
　594 U.S. 413 (2021)...............................................17, 18, 21–24, 28

*Trichell v. Midland Credit Management, Inc.,*
　964 F.3d 990 (11th Cir. 2020)..............................................20, 21, 25

*Underhill v. Welton,*
　32 Vt. 40 (1859)............................................................................26

x

*United States v. Students Challenging Regulatory Agency Procedures, et al.,*
  412 U.S. 669 (1973)................................................................27

*United States v. Sutcliffe,*
  505 F.3d 944 (9th Cir. 2007).............................................36

*USMoney Source, Inc. v. Am. Int'l Speciality Lines Ins. Co.,*
  288 F. App'x 558 (11th Cir. 2008)......................................49

*Velez v. Bank of America, NA,*
  No: 8:18-cv-88-T-35SPF, 2020 WL 13596305 (M.D. Fla.
  Sept. 22, 2020) .................................................................52

* *Walters v. Fast AC, LLC,*
  60 F.4th 642 (11th Cir. 2023) ...........................................18

*Wirth v. Cach, LLC,*
  685 S.E.2d 433 (Ga. 2009) ................................................41

## Statutes and Regulations

12 C.F.R. § 1024.2 .................................................................10

12 C.F.R. § 1024.5 .................................................................10

12 C.F.R. § 1024.41 .........................................................10, 35

15 U.S.C. § 1602 ..................................................................45

15 U.S.C. § 1641 ..................................................................46

15 U.S.C. § 1692(a)............................................................3, 29

15 U.S.C. § 1692d ............................................................29, 30

15 U.S.C. § 1692e ...........................................3, 11, 29, 30, 33, 37

15 U.S.C. § 1692f............................................................11, 29, 33

15 U.S.C. § 1692k ............................................................58–60

20 U.S.C. § 1019 ..................................................................45

28 U.S.C. § 1291 .................................................................................. 1

28 U.S.C. § 1331 .................................................................................. 1

28 U.S.C. § 1332 .................................................................................. 1

28 U.S.C. § 1367 .................................................................................. 1

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ............... 1, 3

Ga. Code § 7-6A-2 .............................................................................. 45

Ga. Code § 13-2-2 ............................................................................... 48

Ga. Code § 44-14-13 ........................................................................... 45

Georgia Fair Business Practices Act, Ga. Code § 10-1-391, et
    seq. ........................................................................................ 1, 4, 11

Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §
    2601 et seq. .................................................................................. 10

## Rules

Fed. R. App. P. 4 ................................................................................. 2

Fed. R. Civ. P. 12 ............................................................................... 13

Fed. R. Civ. P. 23 ............................................................................... 60

## Legislative Materials

123 Cong. Rec. H10243 (daily ed. Apr. 1, 1977) ................................... 29

S. Rep. No. 95-382 (1977) ............................................................... 3, 29

## Other Authorities

*Black's Law Dictionary* (12th ed. 2024) ................................................ 45

Fannie Mae, *Servicing Guide: Fannie Mae Single Family* 60
    (Feb. 12, 2025),
    https://singlefamily.fanniemae.com/media/41666/display ................ 44

Frank J. Cavico, *The Tort of Intentional Infliction of
Emotional Distress in the Private Employment Sector*, 21
Hofstra Lab. & Emp. L.J. 109, 112 (2003) .........................................23

Philip White, *Satisfaction of Commonality Requirement for
Class Actions Under Annotation Fair Debt Collection
Practices Act, 15 U.S.C.A. §§ 1692 et seq.*, 54 A.L.R. Fed.
2d 479 Art. 1 § 2 (2011)......................................................................59

Restatement (Second) of Torts (Am. L. Inst. 1965) .........................27, 36

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over this action under 28 U.S.C. § 1332(d)(1)(A) because the matter in controversy exceeds $5,000,000, and there is complete diversity of citizenship between the named plaintiff and the defendant. *See* Doc. 11 at 7 ¶ 19 (App. 11); *id.* ¶¶ 22–23 (plaintiff and defendant are residents of Georgia and Texas, respectively). The district court independently had subject-matter jurisdiction under 28 U.S.C. § 1331 because Appellant brings claims arising under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and under 28 U.S.C. § 1367 because Appellant's state-law claims arise under the Georgia Fair Business Practices Act, Ga. Code § 10-1-391, et seq. ("FBPA"), and are so related to the FDCPA claims that they form part of the same case or controversy.

This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal seeks review of a final decision. The district court entered an order granting Defendant's motion to dismiss on December 2, 2024, *see* Doc. 23 (App. 241), and entered judgment dismissing the case in its entirety on the same day, *see* Doc. 24 (App. 261). Appellant timely filed her notice of

1

appeal on December 30, 2024. *See* Doc. 25 (App. 262); Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1. Whether Lequita Whitfield's allegations of emotional distress and time spent taking corrective actions in reliance on a debt-collection letter's false representations are sufficient to establish an Article III injury;

2. Whether the least sophisticated consumer would be misled by a debt collector's false representations regarding debt acceleration and foreclosure, where those representations are accompanied by boilerplate caveats; and

3. Whether Ms. Whitfield was required to follow a contractual notice-and-cure provision prior to suing her loan servicer, where, among other things, her loan servicer is not a party or assign to the contract, the contract explicitly states that the notice-and-cure provision does not apply to contractual assignees, and her claims are grounded in consumer law and do not arise out of or relate to the terms of that contract.

2

## INTRODUCTION

The district court held that "emotional distress" and time spent in reliance on a debt-collector's misrepresentations are not "sufficiently concrete" injuries giving rise to Article III standing. That decision conflicts with other decisions by this Court, and it undermines the motivation behind the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which was enacted in response to "abundant evidence" demonstrating "abusive, deceptive, and unfair debt collection practices" inflicted upon debtors. 15 U.S.C. § 1692(a). The statute specifically prohibits "false, deceptive, or misleading representation[s]" made by debt collectors, or any "unfair or unconscionable means" they may employ to extract payment, *see* 15 U.S.C. § 1692e–f, on the rationale that these tactics contribute to a host of non-monetary injuries, like "marital instability," *id.* § 1692(a), or "suffering and anguish," S. Rep. No. 95-382, at 2 (1977).

The statute's concerns mirror Ms. Whitfield's own experience: she suffered injuries contemplated by the FDCPA in response to deceptive debt-collection tactics. Soon after she fell behind on her mortgage payments, she received a letter from her loan servicer that threatened to

3

accelerate the due date of her payments and foreclose on her home if she didn't pay the full amount she owed within thirty-five days. Faced with imminent foreclosure, she felt stressed, anxious, terrified, scared, and anguished. She then spent time taking corrective action: She called her loan servicer, Selene Finance, and borrowed money from her brother in anticipation of making payment.

As she'd later learn, however, the letter's statements were false. Federal law—and Selene's own internal policies—prohibit the company from starting the process of foreclosing on debtors until their debts are more than 120 days past due. On the basis of these misrepresentations, Ms. Whitfield sued Selene under the FDCPA (which prohibits making false statements in connection with the collection of debts), and the Georgia Fair Business Practices Act, Ga. Code § 10-1-393(a) ("FBPA") (which prohibits unfair or deceptive acts in the conduct of consumer transactions).

Departing from the standing law of this Circuit and the core of debt-collection law, the district court dismissed Ms. Whitfield's claims in full, concluding that the harms she suffered—emotional distress, wasted time, and actions taken in reliance on Selene's misrepresentations—are

not concrete injuries giving rise to Article III standing. Despite concluding that it lacked jurisdiction, the court then proceeded to the merits, holding that the letter's representations were not misleading, and that Selene could invoke and rely on a contractual notice-and-cure provision in the mortgage agreement between Ms. Whitfield and her lender to dismiss the suit.

None of these conclusions can stand. Left uncorrected, the district court's decision not only frustrates the purposes of the FDCPA, it also departs from this Circuit's standing jurisprudence. Ms. Whitfield alleges classic Article III injuries that have long been recognized as justiciable in federal courts, including this one. The letter's threatened acceleration and foreclosure is misleading not just to the "least sophisticated consumer"—the standard through which FDCPA claims are evaluated— but to *any* consumer faced with an imminent, credible threat of losing their home. And the notice-and-cure provision in Ms. Whitfield's deed doesn't bar her claims: among other things, the provision is in a contract to which Selene is not a party, Selene cannot step into the shoes of the lender and invoke the provision, and the contract itself is entirely irrelevant to her consumer-law claims. This Court should reverse.

5

## STATEMENT OF THE CASE

### I.    Factual Background

Ms. Whitfield owns and lives in her home in Perry, Georgia. Doc. 11 at 18 ¶ 72 (App. 022). She has a mortgage on her home, which is subject to a security instrument (the "contract," "deed," "agreement," or "mortgage contract") with her lender, Novastar Mortgage, Inc. *Id.* ¶ 73. Ms. Whitfield's loan is secured by a mortgage that is owned, backed, or controlled by Fannie Mae. *See id.* 24 ¶ 106 (App. 028). A special-purpose vehicle[1] became a successor-in-interest of Novastar and subsequently assigned the ownership rights to U.S. Bank National Trust Association. *See id.* at 19 ¶¶ 77–78 (App. 023).

Ms. Whitfield's deed requires one party (either the "Borrower", Ms. Whitfield, or the "Lender," Novastar) to abide by a notice-and-cure procedure before bringing an action against the other in court:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to

---

[1] A special-purpose vehicle ("SPV") is a corporate entity that typically acquires and holds a portfolio of loans that can be transferred between investors. *See* Doc. 11 at 18 ¶¶ 74–76 (App. 022). The SPV will often assign the ownership rights to a related corporate entity or trust for the purpose of acting on behalf of the owner because the SPV exists only to hold a portfolio of loans. *See id.* at 19 ¶ 77 (App. 023).

6

> this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Doc. 11-3 at 9 ¶ 20 (App. 072).

Ms. Whitfield's mortgage went into default. Doc. 11 at 24 ¶¶ 107–08 (App. 028). At some point after it went into default, Selene Finance acquired the servicing rights for Ms. Whitfield's mortgage. *Id.* at 8–9 ¶¶ 28–30, 24 ¶ 107, 29 ¶ 128 (App. 012, 028, 033). Loan servicers like Selene are typically responsible for collecting mortgage payments and distributing those payments to the lender, investors, tax authorities, and insurance companies. *Id.* at 19 ¶ 81 (App. 023). Their rights are also delineated and limited by contract, *see id.* at 21 ¶¶ 90–91 (App. 025); the contract setting forth the terms of Ms. Whitfield's mortgage, for example, explicitly keeps separate the rights of the loan servicer from those of the purchaser, *see* Doc. 11-3 at 9 ¶ 20 (App. 072). It provides that if the "Note is sold," and the loan is later serviced by a loan servicer other than the purchaser of the Note, "the mortgage loan servicing obligations" to Ms. Whitfield "will remain with the Loan Servicer or be transferred to a

7

successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided." *Id.*; *see also* Doc. 11 at 22 ¶ 93 (App. 026).

After Ms. Whitfield's loan was forty-five days delinquent, Selene sent her a letter. *See id.* 24 ¶ 108 (App. 028). The letter is titled "Notice of Default," and states, in relevant part:

> Selene, on behalf of the owner and holder of your mortgage loan, and in accordance with the referenced Security Deed and applicable state laws, provides you with formal notice of the initiation of proceedings to exercise a power of sale.
>
> The mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.
>
> To cure this default, you must pay all amounts due under the terms of your Note and Security Deed. As of 10/27/2023, your loan is due for 09/01/2023 and the total amount necessary to cure your default is $907.33[.]
>
> …
>
> If you have not cured the default within thirty-five (35) days of this notice, Selene may accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due and payable, as permitted by applicable state and federal law. Your property that is collateral for the Note may then be scheduled for foreclosure sale in accordance with the terms of the Security Deed and applicable state laws.

> The total amount you must pay to cure the default
> stated above must be received by 12/01/2023.

Doc. 11-1 at 4–5 (App. 048–49). The letter further states that Selene may reject or accept a partial payment of the total amount due: "For example, if less than the full amount" is received, Selene "can keep the payment and apply it to the debt but may still proceed to foreclosure since the debt would not have been cured." *Id.* at 5 (App. 049).

When Ms. Whitfield read the letter, she—as any consumer would—understood it to mean that if she did not pay the $907.33 balance required to cure the default within thirty-five days, Selene could begin the process of foreclosing on her home. Doc. 11 at 25 ¶ 113 (App. 029). The foreclosure threatened in the letter caused her to experience "anxiety, stress, anger, frustration, and mental anguish." *Id.* at 18 ¶ 71 (App. 022). She believed "she was going to have a heart attack," "would lose her home," and felt "anxious and terrified." *Id.* at 25 ¶ 112–13, 115 (App. 029). In reliance on representations in the letter, Ms. Whitfield spent time taking corrective action: She "borrowed money from her brother to be able to pay Selene," and—though she did not ultimately need to spend the money she had borrowed from him—she "called Selene" in response to receiving the letter. *Id.* at 25 ¶¶ 114–15 (App. 029).

9

As Ms. Whitfield would later learn, the deadline and representations in the letter were, at best, misleading, and at worst, false. By law, Selene can refer a mortgage loan to foreclosure only after it is as least 120 days past due. *See* 12 C.F.R. § 1024.41(f)(1)(i);[2] Doc. 11 at 9 ¶ 31 (App. 013). Selene knows and follows this requirement: A company representative testified in another case that Selene *never* accelerates loans that are less than 120 days delinquent and takes no action against consumers who ignore the thirty-five-day deadline. *See* Doc. 11 at 3–4 ¶¶ 10–12, 12 ¶ 44, 14 ¶ 53 (App. 007–08, 016, 018).

Ms. Whitfield was not the only Georgia resident to receive the letter from Selene. The company sent the form letter to other residents both within and outside of Georgia whose debts were at least thirty-five days past due. *Id.* at 2 ¶ 3 (App. 006).

---

[2] This regulation is promulgated under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. ("RESPA"), and it covers "federally related mortgage loans," 12 C.F.R. § 1024.5(a), which includes loans "intended to be sold by the originating lender to the Federal National Mortgage Association" ("Fannie Mae"), *id.* § 1024.2(b). As a Fannie Mae mortgage servicer, Doc. 11 at 8–9 ¶ 30–31 (App. 012–13), Selene is included in RESPA's definition of "servicer," and bound to follow RESPA and its requirements, *see* 12 C.F.R. § 1024.2(b).

## II.     Procedural History

Federal and state law prohibits debt collectors from making false or misleading statements in connection with the collection of debts. The FDCPA prohibits the usage of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or any "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. The FBPA similarly prohibits unfair or deceptive acts or practices made in the course of consumer transactions, acts, or practices, *see* Ga. Code § 10-1-393(a).

Ms. Whitfield brought putative class claims against Selene under these provisions. *See* Doc. 11 at 25–26 ¶ 117 (App. 029–30). She alleges that Selene used false and deceptive means to collect her outstanding debt and threatened to take action that it either did not intend to take or legally could not take. *Id.* at 30–31 ¶¶ 133–37 (App. 034–35). As a result of Selene's misrepresentations, Ms. Whitfield alleges that she and putative class members were "subjected to harms," or to "material risks" of harm, and seek statutory damages and attorneys' fees under the FDCPA, *id.* at 33–34 ¶¶ 149–51 (App. 037–38), and compensatory and

11

statutory damages, injunctive relief, and attorneys' fees and costs under the FBPA, *id.* at 37 ¶ 170 (App. 041).

Selene moved to dismiss Ms. Whitfield's claims, and the district court granted the motion. Docs. 17, 23, 24 (App. 082, 241, 261). The court dismissed on the basis that Ms. Whitfield lacked an Article III injury to pursue her debt-collection practices claims. Despite "accept[ing] as true" that Ms. Whitfield "experienced emotional distress, called Selene, and borrowed money," Doc. 23 at 9–10 (App. 249–50) (footnotes omitted), the district court concluded that these injuries, "taken together, [do] not match the allegations of harm other courts have found to be sufficiently concrete." *Id.* at 10 (App. 250).

Despite concluding that it lacked jurisdiction over the action, the court then proceeded to the merits, holding in the alternative that Ms. Whitfield's claims must be dismissed for two separate reasons. First, the court concluded that the letter was not misleading as a matter of law because the boilerplate caveats within the letter—for example, providing that Selene would accelerate the maturity date of the loan and foreclose only "as permitted by applicable state and federal law," or would act "in accordance with" "applicable state laws"—sufficiently clarified the true

12

nature of the letter's threats. Doc. 23 at 12 & n.10 (App. 252 & n.10). The court also held that Ms. Whitfield's claims required dismissal because she had failed to notify Selene of the suit pursuant to the notice-and-cure provisions in the contract. *Id.* at 20 (App. 260). The court reached this conclusion despite the fact that the notice-and-cure provision does not refer to loan servicers, Selene is not a contractual assign of the lender (Novastar), the language in the contract specifically exempts contractual assigns from benefiting from or complying with the notice-and-cure provision, and despite Ms. Whitfield's claims arising out of Selene's debt-collection practices—not the terms of the contract.

Ms. Whitfield timely appealed. Doc. 25 (App. 262).

## STANDARD OF REVIEW

The district court dismissed Ms. Whitfield's action under Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, under Rule 12(b)(6). The district court's dismissal for lack of subject-matter jurisdiction or failure to state a claim are questions of law that this Court reviews de novo. *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1205 (11th Cir. 2012); *Taylor v. Polhill*, 964 F.3d 975, 979 (11th Cir. 2020). In its review, this Court applies the same standard applied by

the district court, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011).

## SUMMARY OF ARGUMENT

The district court erred in concluding that Ms. Whitfield lacks standing to pursue her FDCPA and FBPA claims, and it erred in concluding that, as a matter of law, the letter sent by Selene is not misleading and Ms. Whitfield's suit against Selene requires her to follow the pre-suit notice procedures in her mortgage agreement.

First, Ms. Whitfield has standing. This Court and others have recognized that the injuries she alleges—namely, emotional distress and time spent in reliance on Selene's misrepresentations—give rise to a justiciable controversy. Her injuries are among those that have long been recognized by courts, and they are directly contemplated by the statutes under which she brings her claims.

Second, the least sophisticated consumer—indeed, *any* reasonable consumer—would be misled by the representations in Selene's letter. The letter threatens to accelerate Ms. Whitfield's outstanding debt and foreclose on her home if she does not pay the full amount listed on the

letter within thirty-five days of the letter's receipt. That threat is false: Both federal law, and Selene's own internal policies, prevent Selene from accelerating and foreclosing on a debtor before their debts are 120 days past due. The letter's generalized caveats—providing that Selene "may" accelerate, or nevertheless act "in accordance" with applicable state and federal law—do not sufficiently clarify the true nature of letter's representations. The promised acceleration and foreclosure language both overshadows and directly contradicts Selene's caveats that it will follow "applicable state and federal law" in the course of servicing Ms. Whitfield's debt.

Third, Ms. Whitfield was not required to provide notice under the contractual notice-and-cure provision in her deed prior to bringing her consumer-law action in court. That provision requires either the borrower or lender to provide pre-suit notice and an opportunity to cure to the other prior to filing suit in court. Selene cannot invoke this provision to dismiss Ms. Whitfield's suit for any one of a handful of independent reasons: The provision applies between the borrower (Ms. Whitfield) and the lender (Novastar), and Selene is not a contractual assign of the lender, preventing it from stepping into Novastar's shoes

15

and invoking the provision; the contract itself prevents assignees of the lender from invoking the notice-and-cure provision; Ms. Whitfield's claims are grounded in consumer law, and do not arise from the agreement; Selene has taken the position in other breach-of-contract claims around the country that it is not a party to similar agreements, estopping it from so arguing here; and finally, application of the notice-and-cure provision to claims like Ms. Whitfield contravene FDCPA policy and purpose.

This Court should reverse on all three grounds.

## ARGUMENT

## I.    Ms. Whitfield Sufficiently Alleged Article III Standing.

Ms. Whitfield's allegations describing "emotional distress" and the time she spent in reliance on Selene's misrepresentations—"call[ing] Selene" and "borrow[ing] money from her brother"—"taken together," Doc. 23 at 9–10 (App. 249–50), constitute an injury-in-fact and establish Article III standing. The district court's conclusion that Ms. Whitfield lacks standing runs contrary to binding precedent and impermissibly heightens the Article III burden on plaintiffs at the pleadings stage.

16

### A.    Ms. Whitfield Suffered Concrete Injuries.

This Court's and the Supreme Court's standing jurisprudence leave no doubt that Ms. Whitfield has established an injury-in-fact sufficient to sue in federal court. Both *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), and *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) recognize that concrete Article III injuries can be tangible *or* intangible. The "most obvious" tangible injuries include "physical harms and monetary harms." *TransUnion*, 591 U.S. at 425. Intangible concrete harms include constitutional injuries, harms resulting from discriminatory practices, or other injuries that bear a close resemblance to the harms traditionally recognized at common law. *See Green-Cooper v. Brinker Int'l Inc.*, 73 F.4th 883, 889 n.7 (11th Cir. 2023) (listing intangible injuries giving rise to Article III standing).

Under this framework, Ms. Whitfield suffered concrete injuries: She alleges that Selene's misrepresentations caused her emotional distress ("experienced anxiety, stress, anger, frustration, and mental anguish," Doc. 11 at 18 ¶ 71 (App. 022); "felt anxious and terrified," "was going to have a heart attack," "[s]cared she would lose her home," *id.* at 25 ¶¶ 112–13, 115 (App. 029)); and spend time in reliance on the

misrepresentations ("called Selene," *id.* ¶ 114, "borrowed money from her brother," *id.* ¶ 115).

This Court has already held that these injuries are cognizable. In *Losch v. Nationstar Mortgage, LLC*, 995 F.3d 937 (11th Cir. 2021), a panel of this Court concluded that the plaintiff's "emotional distress and time he spent contesting" a consumer reporting agency's inaccurate representations on a credit report constituted a "concrete injury." *Id.* at 943. This Court explained that there is "no question that wasted time is a concrete harm," *id.*, and held that the plaintiff's testimony "regarding 'stress, anxiety, and lack of sleep'" were "not mere conclusory recitations," but created a question of fact with respect to damages at summary judgment, *id.* at 944. Relying on *Losch*, this Court again held in *Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023), that "each" of "emotional distress" and "wasted time" are "concrete injur[ies] in fact."[3] *Id.* at 648;

---

[3] *TransUnion* recognizes as much: a class of plaintiffs who had received mailers that were formatted incorrectly in violation of the Fair Credit Reporting Act did not have standing because they had not presented evidence that they had opened the mailings or that they were "confused, distressed," or relied on the information they had received "in any way." 594 U.S. at 441 (quotation marks omitted). The Court then went on to uphold individual standing for the named plaintiff—who had presented such evidence—regarding this same claim. *Id.* at 440 n.8.

18

*see also Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) (stating that "lost time" communicating with financial institutions in an attempt to correct misinformation is a concrete injury); *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (concluding that the plaintiff suffered a concrete injury where she "alleged that she 'lost time . . . attempting to resolve [] credit inaccuracies'") (first alteration in original).

This Court has applied these principles in the lending and debt-collection context. *Rivas v. Midland Funding, LLC*, 842 F. App'x 483 (11th Cir. 2021), held that a debt collector affiliate's website listing incorrect amounts of a consumer's debt owed had inflicted a concrete FDCPA injury with "damaging consequences, namely loss of sleep and extreme stress." *Id.* at 486. Like Ms. Whitfield, the plaintiff in *Rivas* alleged distress in response to his "reliance on the information" presented by the affiliate: He described feeling "confused," "really upset," "stressed and worried," and that he "couldn't sleep" because of the incorrect amounts. *See id.* The Eleventh Circuit again affirmed the constitutional viability of these types of injuries in *Toste v. Beach Club at Fontainebleau Park Condominium Association*, No. 21-14348, 2022 WL 4091738 (11th

Cir. Sept. 7, 2022). Reversing the district court's "determin[ation]" that the plaintiff's "emotional damages" and "time he spent trying to discover the true amount of his debt" were "too insubstantial," *id.* at \*4, this Court held that the plaintiff's "time spent trying to determine the correct amount of his debt" and "emotional distress manifesting in a loss of sleep" were both "sufficiently tangible to confer Article III standing," *id.*; *see also id.* (stating that "a plaintiff's wasted time, in particular, can be a concrete injury for standing purposes," and noting that the plaintiff had expended at "least several minutes in connection with" each of the allegedly misleading debt-collection letters he had received). These cases answer the Article III question presented here: The injuries Ms. Whitfield pled are cognizable, and she has provided "general factual allegations of injury" that "suffice" for establishing an injury-in-fact at the motion-to-dismiss stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

No decision by this Court says otherwise. In dismissing Ms. Whitfield's claims, the district court relied on three cases that denied standing on grounds irrelevant here: *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020), *Cooper v. Atl. Credit &*

20

*Fin. Inc.*, 822 F. App'x 951 (11th Cir. 2020), and *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020) (en banc). In *Trichell,* the plaintiffs alleged only that letters they received from a debt collector were misleading, "without proving even that they relied on the representations, much less that the reliance caused them any damages." 964 F.3d at 998. Even more, any unmaterialized risk of harm caused by the letter's misrepresentations to the plaintiffs had entirely "dissipated" at the point that the plaintiffs filed their claims. *See id.* at 1002–03; *see also TransUnion*, 594 U.S. at 436 & n.7 (stating that "mere risk of future harm, standing alone" is unlikely to constitute an Article III injury, but emotional distress or other harm resulting from "exposure to the risk of future harm itself" can cause concrete harm). Neither of these situations applies to Ms. Whitfield, who pled that she was affirmatively misled by the letter sent by Selene, experienced emotional distress, and spent time and took actions in reliance on the representations.

*Cooper* and *Muransky* are inapposite for similar reasons. In *Cooper*, the plaintiff alleged only that she experienced "confusion" in response to a statutory notice. 822 F. App'x at 955. And in *Muransky*, this Court—acknowledging that "allegations of wasted time can state a concrete harm

21

for standing purposes"—concluded that the plaintiff had failed to establish how he had expended any additional time responding to the risk of harm presented by a receipt with his credit-card number printed on it. None of these cases give reason to doubt the justiciability of Ms. Whitfield's claims.

This Court need look no further than its own, recent consumer-law decisions to reverse the district court. Ms. Whitfield's allegations fall squarely within what this Court has repeatedly held is sufficient to satisfy Article III, and the district court erred by departing from the result compelled by this precedent.

> ### B.    Ms. Whitfield's Injuries are Consistent with Harms Traditionally Recognized.

Ms. Whitfield's injuries also bear close resemblance to harms traditionally recognized by U.S. courts. To determine whether an injury alleged is sufficiently concrete, courts may consider whether the alleged "harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341; *see TransUnion*, 594 U.S. at 424 (stating that the common-law inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for [the] asserted injury"). This

22

inquiry does not require an "exact duplicate in American history and tradition," *id.*; a "'close relationship' in kind"—"not degree"—is sufficient. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020);[4] *see also Muransky*, 979 F.3d at 926 ("The fit between a new statute and a pedigreed common-law cause of action need not be perfect, but we are called to consider at a minimum whether the harms match up between the two.").

Emotional distress bears close resemblance to harms actionable at common law. Litigants have long been able to recover for emotional distress, divorced from physical injury, in U.S. courts. *See* Frank J. Cavico, *The Tort of Intentional Infliction of Emotional Distress in the Private Employment Sector*, 21 Hofstra Lab. & Emp. L.J. 109, 112 (2003); *see also, e.g.*, *Ballou v. Farnum*, 11 Allen 73, 77 (Mass. 1865) ("In a variety of actions founded on personal torts, and in many where no positive bodily harm has been inflicted, the plaintiff is permitted to recover for injury to the feelings and affections, for mental anxiety, personal insult, and that wounded sensibility which follows the invasion of a large class

---

[4] *TransUnion* cited favorably to the analysis in *Gadelhak*, using it as an example of a case analogizing a modern harm to a traditionally recognized harm. 594 U.S. at 425.

23

of personal rights."); *San Antonio Traction Co. v. Crawford*, 71 S.W. 306, 306 (Tex. Civ. App. 1902) ("[T]he decided weight of authority is that compensatory damages for mental suffering may be recovered, though there has been no physical injury.") (quotation marks omitted); *Cole v. Atlanta & W.P.R. Co.*, 31 S.E. 107, 108 (Ga. 1897) (allowing recovery of damages resulting "from insult, abuse, and ill treatment of a nature which the law thus recognizes as furnishing the basis of an action calling for damages calculated to deter a wrongdoer").

Evaluating the concreteness of harms alleged under the FDCPA, other courts have concluded that harms resulting from the tort of infliction of emotional distress provide "[a] close common-law analogue[]" to emotional injuries caused by unlawful debt-collection practices. *See Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1136 & n.2 (8th Cir. 2023); *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) (under the FDCPA, stating that "'emotional distress' is a traditional harm that satisfies *TransUnion*'s concreteness requirement"); *see also Thome v. Sayer L. Grp., P.C.*, 567 F. Supp. 3d 1057, 1075 (N.D. Iowa 2021) ("Because the FDCPA cause of action is 'closely related' to the misappropriation torts, the Court finds that plaintiff successfully pled a

24

'concrete' injury with her confusion and distress stemming from defendant's alleged misrepresentation."). Consistent with this analogy, this Court has interpreted the "actual damages" clause in the FDCPA to include recovery for emotional distress.[5] *See Minnifield v. Johnson & Freedman, LLC*, 448 F. App'x 914, 916–17 (11th Cir. 2011).

The same is true of the time Ms. Whitfield spent and the actions that she took in reliance on Selene's misrepresentations. Appellate judges have analogized consumer-law claims to harms resulting from misrepresentations and concluded that plaintiffs have standing to sue where they establish some detrimental reliance on the misrepresentations. *See Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 149 (3d Cir. 2023) (analogizing FDCPA claim to harm resulting from fraudulent misrepresentation); *Trichell*, 964 F.3d at 1008–10 (Martin, J., concurring in part and dissenting in part) (observing a "close relationship" between the harm resulting from acts taken in reliance on

---

[5] This Court has reached the same conclusion with respect to the damages clause of the FBPA. *See Cross v. Equityexperts.org, LLC*, No. 19-14067, 2021 WL 5279412, at *9 (11th Cir. Nov. 12, 2021) ("A plaintiff who establishes a [FBPA] violation may recover damages," and "[u]nder Georgia law, emotional distress is an actual injury resulting in actual damages, and proof of that injury can support an award of actual damages").

25

a debt collector's misrepresentations and those resulting from common-law fraud). And wasted time is one way in which a party can detrimentally rely on another's misrepresentations; where a party spends time resolving the true nature of another's misrepresentations, the "time of the injured party has been consumed in doing a vain thing[.]" *Allaire v. Whitney*, 1 Hill 484, 487 (N.Y. Sup. Ct. 1841).

Even absent any allegations of fraud, courts in this country have, in a variety of circumstances, allowed plaintiffs to recover for a loss of time caused by the defendant's unlawful behavior. *See, e.g., Underhill v. Welton,* 32 Vt. 40, 42 (1859) (sustaining verdict for slander alleged to have resulted in "loss of time," which the court held, "has always been regarded as a good allegation of pecuniary loss"); *Peck v. Neil,* 19 F. Cas. 79, 80 (Ohio C.C. 1842) (stating that a damages award for reckless driving is "to be ascertained by the expenses incurred, the loss of time and the suffering which has been endured"); *Jacobs v. Inhabitants of Bangor,* 16 Me. 187, 192 (1839) (affirming high damages award, and noting, the excess "damages were probably made up partly by allowing for the loss of time").

Because the common-law-analogue inquiry requires a fit in "kind" and "not degree," it is irrelevant that Ms. Whitfield's allegations of

26

emotional distress or wasted time may be insufficient to state a claim under the torts of emotional distress or fraudulent misrepresentation, respectively. *See Gadelhak*, 950 F.3d at 462; *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 828 (10th Cir. 2022) ("[A] plaintiff may have standing for a statutory claim even if she could not succeed on the traditional tort."). A small amount of cognizable harm is sufficient to create standing—even an "identifiable trifle" is enough—regardless of whether the plaintiff could make out a claim on the merits. *United States v. Students Challenging Regulatory Agency Procedures, et al.*, 412 U.S. 669, 690 n.14 (1973) (quotation marks omitted). For that reason, an emotional-distress suit against a creditor for demanding payment in a "rude and insolent" manner, for example, does not fail on standing grounds: It fails because it does not allege conduct that is "so extreme or outrageous" as to satisfy the elements of an emotional-distress tort. *See* Restatement (Second) of Torts § 46, cmt. e, illus. 8 (Am. L. Inst. 1965); *see also, e.g.*, *Robinson v. Managed Accts. Receivables Corp.*, 654 F. Supp. 2d 1051, 1062 (C.D. Cal. 2009) (dismissing emotional-distress claim against debt collector not on standing grounds, but because complaint "fail[ed] to allege how Plaintiff suffered emotional distress");

27

*Ridgewells Caterer, Inc. v. Nelson*, 688 F. Supp. 760, 764 (D.D.C. 1988) (granting summary judgment on emotional-distress claim to company seeking to collect unpaid debts, on the basis that allegedly "rude and insulting" behavior was insufficiently extreme to meet the elements of the tort).

Plaintiffs have long been able to recover for emotional distress and for actions taken in reliance on another's misrepresentations—including wasted time—evidencing the "close relationship" between Ms. Whitfield's injuries and harms "traditionally [] regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341.

## C.    Debt-Collection Law Directly Targets Non-Monetary Harms.

The harms alleged by Ms. Whitfield also lie at the core of the FDCPA's remedial purpose. *See TransUnion*, 594 U.S. at 425 (stating that Congress's views regarding concrete injuries may be "instructive"). The FDCPA itself makes clear that Congress intended the prohibition of unfair and deceptive debt-collection tactics to protect consumers against both financial injury and the mental and emotional harms that are the natural consequence of these tactics. The statute was enacted in response to "abundant evidence of the use of abusive, deceptive, and unfair debt

28

collection practices by many debt collectors," 15 U.S.C. § 1692(a), and sought to remedy the "suffering and anguish" that these practices "regularly inflict," S. Rep. No. 95-382, at 2; *see also* 123 Cong. Rec. H10243 (daily ed. Apr. 1, 1977) (stating that the "[p]assage" of the FDCPA "is important if consumers throughout this country are to be protected from the mental anguish and intimidation that are the consequences of abusive debt collection practices"); *Crossley v. Lieberman*, 90 B.R. 682, 692 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989) (relying on congressional findings and declaration of FDCPA's purpose and noting that, "violations of the FDCPA, by their very nature" "are those kinds of actions which may be expected to cause emotional distress").

These concerns are manifested in the FDCPA's text. The law prohibits actions that naturally cause distress, outlawing "false representation[s]" that "disgrace the consumer," 15 U.S.C. § 1692e(7), "conduct the natural consequence of which is to harass, oppress, or abuse," *id.* § 1692d, and the use of "any unfair or unconscionable means to collect or to attempt to collect any debt," *id.* § 1692f. The FDCPA specifically bans tactics that have a tendency to create fear, confusion,

29

stress, anxiety, or other negative emotions. *See, e.g., id.* § 1692d(1) (barring the "threat of use of violence"); *id.* § 1692d(2) (prohibiting the use of "obscene or profane language"); *id.* §§ 1692d(6), 1692e(4)–(5), (7), (14)  (protecting against confusion by prohibiting anonymous calls, false threats and statements, threats of arrest or imprisonment, threats that cannot be taken, or using false business information).

*    *    *

Concluding that Ms. Whitfield's injuries are concrete is consistent with this Court's precedent, harms recognized at common law, and the conduct identified and targeted by the FDCPA. This court should reverse the district court's conclusion and hold that Ms. Whitfield established that she suffered a concrete injury in fact.

### D. If this Court Affirms the District Court's Standing Analysis, it Should Vacate the Rest of the Court's Opinion.

If this Court disagrees with Ms. Whitfield and affirms the district court's standing conclusion, it should vacate the district court's 12(b)(6) analysis. Despite concluding that Ms. Whitfield lacked standing, the district court "assume[d], *arguendo*," that its jurisdictional analysis was incorrect, and then reached Selene's merits arguments in the alternative,

30

dismissing Ms. Whitfield's claims as a matter of law. *See* Doc. 23 at 11 (App. 251). But if the district court's standing analysis is correct, it did not have jurisdiction to reach the merits or issue an opinion regarding whether Ms. Whitfield stated claims as a matter of law.

Article III prevents difficult jurisdictional questions from being bypassed in favor of comparatively straightforward merits questions. The Supreme Court has rejected such exercises of "hypothetical jurisdiction" on the rationale that assumed—rather than considered—jurisdiction results in a "hypothetical judgment," which "comes to the same thing as an advisory opinion, disapproved by [the Supreme] Court from the beginning." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *see also, e.g., Corbett v. Transportation Sec. Admin.*, 930 F.3d 1225, 1228 (11th Cir. 2019) ("In the absence of standing, the federal courts do not have the power to opine in an advisory capacity about the merits of [the] claims."); *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1288 (11th Cir. 2012) ("Even if the resolution of the merits were foreordained—an issue we do not decide—the Supreme Court has explicitly rejected the theory of 'hypothetical jurisdiction.'").

31

The prohibition on advisory opinions is more than a procedural technicality: It rightfully prevents the development of substantive law on non-justiciable facts. If Ms. Whitfield lacks standing, the district court's decision on Ms. Whitfield's claims decides "questions that cannot affect the rights of litigants" in Ms. Whitfield's suit and provides an opinion "advising what the law would be upon a hypothetical set of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation marks omitted). The Supreme Court and this Court have vacated district court opinions that constitute similar "academic exercise[s]" in other contexts. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1560 (11th Cir. 1988); *see also Ashcroft v. Mattis*, 431 U.S. 171, 172–73 (1977). If this Court affirms the district court's standing analysis, it should follow suit here and vacate the court's non-jurisdictional analysis.

## II.     The Least Sophisticated Consumer Would be Misled by the Misrepresentations in Selene's Letter.

If the panel concludes Ms. Whitfield has standing, it should reverse the district court's determination that Selene's letter was not misleading as a matter of law. Ms. Whitfield alleges that the letter is misleading because it states that she must cure her default within thirty-five days of the letter to avoid acceleration of the amount owed the foreclosure

32

proceedings that follow, and Selene is barred by law and its own practice from accelerating her mortgage within that timeframe. Doc. 11 at 3 ¶ 10, 9 ¶¶ 31–32, 12 ¶ 043 (App. 007, 013, 016); Doc. 11-1 at 4–5 (App. 048–049). The district court concluded that the conditional language or boilerplate caveats in Selene's letter—i.e., providing that Selene would act "in accordance with" Ms. Whitfield's security deed and "applicable state laws," or "as permitted by applicable state and federal law"—would "lead the least sophisticated consumer to understand" that Selene would not actually foreclose on the timeline promised in the letter. Doc. 23 at 12–13 & n. 10 (App. 252–53 & n.10). This conclusion is wrong.

*First*, this Court should reverse and hold that the letter is misleading as a matter of law. To determine whether a communication by a debt collector is false, deceptive, or misleading, courts apply the "least sophisticated consumer" standard,[6] which asks whether a person who is "ignorant, and unthinking, gullible, and of below-average sophistication or intelligence" would be misled by a debt collector's false

---

[6] The standard applies to statements challenged under both § 1692e, *see Caceres v. McCalla Raymer, L.L.C.*, 755 F.3d 1299, 1303 (11th Cir. 2014), and § 1692f, *see Holzman v. Malcolm S. Gerald & Assoc., Inc.*, 920 F.3d 1264, 1269 (11th Cir. 2019).

statements. *Pinson*, 942 F.3d at 1210 (cleaned up). It is a protective standard, intended to judge a debt-collector's practices by reference to "'naive consumers' with a minimal understanding of personal finance and debt collection." *Id.*; *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172 (11th Cir. 1985) (rejecting the application of a "reasonable consumer" standard to the evaluation of unfair or deceptive acts); *cf. FTC v. Standard Educ. Soc'y*, 302 U.S. 112, 116 (1937) ("The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.").

Viewed through the lens of the least-sophisticated consumer, the letter sent by Selene is misleading. Misleading collection notices "contain language that 'overshadows' or 'contradicts' other language that informs consumers of their rights." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1195 n.18 (11th Cir. 2010) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). Here, Selene's letter states that the recipient "*must*" pay the total amount provided within thirty-five days of receipt to "cure [the] default," and, if the default is "not cured" within those thirty-five days, "Selene may accelerate the maturity date of the Note," and the

34

"property that is collateral for the Note may then be scheduled for foreclosure[.]" Doc. 11-1 at 4 (App. 048) (emphasis added). These statements are false: Federal law prohibits Selene from referring a mortgage loan to foreclosure before it reaches 120 days delinquency, 12 C.F.R. § 1024.41(f)(1)(i), and prior testimony indicates that Selene never accelerates loans before that time, Doc. 11 at 3–4 ¶¶ 10–11 (App. 007–8). The 120-day bar makes false even Selene's statements that it "*may*" accelerate the maturity date of the Note before that time, Doc. 11-1 at 4 App. 048), because it cannot and does not.

Faced with a credible threat of foreclosure on a promised timeline, *most* consumers—not just the least sophisticated consumer—would appropriately act in reliance on Selene's threat, without knowing or having reason to suspect that carrying out the threats would violate Selene's own internal policies and federal law. At any rate, Selene's threats "contradict," or—because of their severity, "overshadow," *LeBlanc* 601 F.3d at 1195 n.18—any general, boilerplate caveat by Selene that it will follow "applicable law." *See, e.g.*, *Avila v. Riexinger & Assocs.*, LLC, 817 F.3d 72, 75 (2d Cir. 2016) ("[A] collection notice can be misleading if it is open to more than one reasonable interpretation, at

35

least one of which is inaccurate.") (quotation marks omitted). Presented with two contradictory statements—one which results in severe personal consequences, the other which does not—an unsophisticated consumer reasonably acts in reliance on the former interpretation. On the same rationale, an actor making a "clear and unambiguous" threat to another does not escape guilt by pointing to "the conditional nature of [the] statement," *United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007) (quotation marks omitted), nor escape liability by demonstrating that they do not have the ability to carry out the threat, Restatement (Second) of Torts § 33 (Am. L. Inst. 1965); *see also id.* § 30. So too here: a daunting threat of imminent foreclosure is not mitigated by generalized caveats, and the least sophisticated consumer—indeed, likely most reasonable consumers—would take actions in reliance on the threat.

This Court and others have agreed that conditional, caveated, or partially true language cannot save a collection notice from being false or misleading. *See, e.g.*, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1277 (11th Cir. 2016) (concluding, under the least-sophisticated consumer standard, that a letter that informed the debtor that she had thirty days to dispute a debt—without advising her that she was required

36

to dispute the debt in writing—stated a claim for false, deceptive, or misleading behavior under § 1692e); *Avila*, 817 F.3d at 75–76 (holding that a letter that states a consumer's "current balance" but does not disclose that the balance may increase due to interest and fees is misleading under the FDCPA, because a consumer could be misled into believing they could pay their debt in full by paying the balance listed on the notice). It is deceptive for a debt collector "to assert that it *could* take an action that it had no intention of taking and has never or very rarely taken before," *Brown v. Card Service Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (emphasis in original), and this Court should find so here.

*Second*, if this Court disagrees that it can determine that the letter is false as a matter of law, the panel should nevertheless reverse, because the district court erred by making this determination at the pleadings stage. This Court has held that where there are "two sets of reasonable inferences that can be drawn" from a debt-collection letter, "and one set of inferences would violate" the FDCPA, "while the other would not," "a jury" should "decide which set of inferences to draw." *Kuehn v. Cadle Co.*, 335 F. App'x 827, 830 (11th Cir. 2009). Under this rationale, this Court has previously sent to a jury the question of whether a letter could be

37

viewed as a threat to take legal action under the least-sophisticated standard, where that letter contained conditional caveats:

> *If* we are unable to resolve this issue within 35 days we *may* refer this matter to an attorney in your area for legal consideration. *If* suit is filed and *if* judgment is rendered against you, we *will* collect payment utilizing all methods legally available to us, subject to your rights below.

*LeBlanc*, 601 F.3d at 1195. Although the debt collector "reli[e]d on the use of conditional language such as 'if' and 'may'" "in an effort to safeguard the letter from being construed as 'threatening,'" this Court held that a "reasonable juror" could nevertheless "read the [] letter as intimating that a lawsuit will follow *immediately* after the end of the 35 day 'grace' period." *Id.* at 1196. The same reasoning extends to the letter here: Selene's letter states both that it will foreclose upon Ms. Whitfield's home on a thirty-five-day timeline, then undermines that promise through a vague reference to "applicable law." A reasonable juror— stepping into the shoes of the least sophisticated consumer—could conclude that the letter, as a whole, is misleading.

This Court should hold that Selene's letter is not false as a matter of law, or, in the alternative, vacate the court's dismissal and hold that Ms. Whitfield has stated a claim under the FDCPA and FBPA, allowing

38

her an opportunity for fact-finding regarding the falsity of the letter's representations.

### III.    The Notice-and-Cure Provision Does Not Bar Ms. Whitfield's Claims.

This Court should also reverse the district court's determination that Ms. Whitfield's claims are barred by the notice-and-cure provision in her deed. The mortgage contract—signed by Ms. Whitfield and her original lender, Novastar—contains the notice-and-cure provision in question, and requires one party to notify the other before commencing an action in court regarding an "alleged breach" "that arises from the other party's actions pursuant to" the contract, providing them a "reasonable period" to take correction action. Doc. 11-3 at 9 ¶ 20 (App. 072). Noting that Ms. Whitfield did not provide pre-suit notice to Selene, the district court erred by concluding that Selene is a full and complete assign of the lender and can avail itself of the provision, and by concluding that Ms. Whitfield's claims against Selene arise out of the agreement. Doc. 23 at 17–20 (App. 257–60). Both conclusions conflict with the allegations in the complaint, and they are incorrect as a matter of law.

This Court can reverse the district court's conclusion that Ms. Whitfield's claims are barred by the notice-and-cure provision on any one of five independent grounds. First, Selene is not a signatory or a contractual assign—it has not assumed all the rights and obligations of the lender, preventing it from stepping into the lender's shoes for purposes of the mortgage agreement. Second, even if Selene is an assign, the language of the agreement explicitly states that the notice-and-cure provision does not apply to contractual assigns. Third, Ms. Whitfield's claims have nothing to do with the deed—they are consumer-law claims irrelevant to the terms of her mortgage. Fourth, judicial estoppel prevents Selene from asserting that it is an assign to the agreement. Selene has argued, under identical contractual language, that it is not a party to mortgage contracts it merely services. Finally, even if the mortgage contract somehow requires Ms. Whitfield to give notice to Selene for these claims, enforcement of the notice-and-cure provision undermines Congress's goal of empowering consumers to hold predatory debt collectors accountable under the FDCPA, and this Court should conclude that the notice-and-cure provision is contrary to public policy and unenforceable.

40

### A.    Selene is not an assign of the lender.

Ms. Whitfield is not required to provide pre-suit notice to Selene because Selene is not a signatory to the contract, nor is it a full and complete assign of the lender's obligations under the contract. The contract is between the lender (Novastar) and the borrower (Ms. Whitfield), so—as a nonsignatory—the only way that Selene can enforce the notice-and-cure provision is by establishing that it can step into the lender's shoes as an assign of the lender. *Scott v. Cushman & Wakefield of Ga., Inc.*, 547 S.E.2d 794, 796 (Ga. 2001)[7] ("[O]nly parties to a contract may bring a suit to enforce it."). Georgia law allows a party to "assign" their contractual "rights and interests" to another. *Wirth v. Cach, LLC,* 685 S.E.2d 433, 435 (Ga. 2009); *LSREF2 Baron, LLC v. Alexander SRP Apartments*, LLC, 17 F. Supp. 3d 1289, 1305 (N.D. Ga. 2014). The district court erred in finding that Selene is an assign to the contract because

---

[7] Georgia law applies to the question of whether Selene is a contractual assign to the mortgage deed. The contract specifies that the conveyance should be construed under Georgia law, *see* Doc. 11-3 at 11 ¶ 26 (App. 074) and, separately, Georgia law provides that contracts are governed by the law of the place they were made or performed, *see Amstell, Inc. v. Bunge Corp.*, 443 S.E.2d 706, 707 (Ga. Ct. App. 1994); *see also* Doc. 11-3 at 11 (App. 074) (notarizing contract in Georgia).

Selene has not demonstrated that it has assumed the obligations of the lender.

Selene is entitled only to service Ms. Whitfield's loan, and there is no indication that, as a servicer, it has been assigned all rights and obligations held by the lender and can avail itself of contractual provisions intended to benefit and bind the lender. In Georgia, once the assignor delegates all the contract's rights and obligations to the assign, the assign becomes "the real party interest in interest." *Ellerbee v. Hawes*, 546 S.E.2d 332, 333 (Ga. Ct. App. 2001) (quotation marks omitted). Nothing in Selene's default notice, the mortgage contract, the servicing transfer information document, or the document describing Selene's limited power of attorney indicates that any ownership or lender rights have been transferred from Novastar to Selene. *See* Docs. 11-1 at 4–6, 11-3 at 2–14, 11-4 at 2–3, 22-1 at 2–4 (App. 048–50, 065–78, 080–81, 237–40). In Selene's own words, it services loans "*on behalf of* the current owner" of the loan and provides the default notices to the Borrower "*on behalf of* the owner and holder of [the borrower's] mortgage loan." Doc. 11-1 at 4 (App. 048) (emphasis added); *see also* Doc. 22-1 at 4 (App. 239) (allowing Selene to "further delegate" its servicing authority).

42

The contract itself anticipates that Selene, as a servicer, will not and cannot step into the shoes of the lender. It explicitly defines "lender" separately from "loan servicer," *see* Doc. 11-3 at 2, 9 (App. 065, 072) and limits the servicer's obligations to "collect[ing] Periodic Payments due under the Note and this Security Instrument and perform[ing] other mortgage loan servicing obligations," Doc. 11-1 at 9 ¶ 20 (App. 072). The contract limits the servicer's obligations and does not assume that it will not hold any ownership obligations under the deed. District courts, both in the Eleventh Circuit and elsewhere, have read identical or similar language to conclude that notice-and-cure provisions do not apply to servicers. *See, e.g.*, *Cruz v. Selene Fin.*, LP, No. 23-14297, 2024 WL 5374001, at *11 (S.D. Fla. Nov. 21, 2024) ("[T]he most natural reading of the plain language of the Notice Provision is that it is limited to disputes between the Borrower and the Lender."); *Johnson v. Specialized Loan Servicing*, LLC, No. 3:16–cv–178–J–MCR, 2017 WL 4877450, at *2 ("[T]he 'notice-and-cure' provision applies only to disputes between Plaintiff and her lender."); *Schmidt v. Wells Fargo Home Mortgage*, No. 3:11–CV–059, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 F. App'x. 868 (4th Cir. 2012) ("The notice-and-cure provisions in the deeds

43

of trust bind the borrower and the lender, not the borrower and the loan servicer."); *Patrick v. Teays Valley Trustees, LLC*, No. 3:12–CV–39, 2012 WL 5993163, at \*9 (N.D. W.Va. Nov. 30, 2012) (same); *Phillips v. Ocwen Loan Servicing, LLC*, 92 F. Supp. 3d 1255, 1289 (N.D. Ga. 2014) (citing *James v. Litton Loan Servicing, L.P.*, No. 4:09–CV–147, 2011 WL 59737, at \*30 (M.D. Ga. Jan. 4, 2011) ("[A] loan servicer . . . is not a party to or an assignee of the Note itself.")); *see also Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 938, 941 (S.D. Ohio 2010); *Mills v. Select Portfolio Servicing, Inc.*, No. 18-CV-61012, 2018 WL 5113001, at \*5 (S.D. Fla. Oct. 19, 2018).

Fannie Mae's servicing guidelines confirm this arrangement. Selene, as Ms. Whitfield alleged, is a Fannie Mae servicer, and Ms. Whitfield's mortgage is owned, backed, or controlled by Fannie Mae. *See* Doc. 11 at 24 ¶ 106 (App. 028). The servicing guidelines issued by Fannie Mae apply to Selene and state that "the servicer [i.e., Selene] services Fannie Mae's mortgage loans as an independent contractor and *not as an agent, assignee, or representative of Fannie Mae.*" Fannie Mae, *Servicing Guide: Fannie Mae Single Family* 60 (Feb. 12, 2025), https://singlefamily.fanniemae.com/media/41666/display (emphasis

44

added). The guidelines underscore that Selene is *not* an assignee and plays no role beyond the servicing obligations it has been delegated.

Concluding that Selene cannot step into the shoes of the lender in the mortgage agreement also conforms with the distinct roles that lenders and servicers typically play. Lenders are understood to be entities that loan money for temporary use on condition of repayment with interest. *Lender, Black's Law Dictionary* (12th ed. 2024). Selene merely "services the . . . loan on behalf of the current owner" of the loan. Doc. 11-1 at 4 (App. 048). Georgia state and federal statutes further underscore the common understanding that loan servicers are not considered lenders or similar entities. *See, e.g.,* Ga. Code § 44-14-13(a)(4) ("'Lender' means any person or entity regularly engaged in making loans secured by mortgages or deeds to secure debt on real estate."); *id.* § 7-6A-2(6)(A) (excluding loan servicers from the definition of a "Creditor"); 15 U.S.C. § 1602(dd)(2)(G) (excluding loan servicers from the definition of a "Mortgage Originator"); 20 U.S.C. § 1019(6) (excluding servicers from the definition of a "lender").

Both Congress and federal circuit courts have also clarified that servicers are not assigns of lenders absent clear authorization and

45

evidence of loan ownership. *See, e.g.*, 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation . . . unless the servicer is or was the owner of the obligation."); *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1245 (9th Cir. 2012); *Mourad v. Homeward Residential, Inc.*, 517 F. App'x. 360, 364 (6th Cir. 2013). As a non-owner of the debt, Selene is not considered an assign by federal law and therefore is not covered by the notice-and-cure provision.

The district court's conclusion that Selene's role as the lender's power of attorney somehow allows Selene to enforce the provision is wrong. Doc. 23 at 19 (App. 259). "[A]ssignment and the power of attorney are two separate things." *Bell v. Sasser*, 520 S.E.2d 287, 292 (Ga. Ct. App. 1999) (citing *Peoples Bank v. Jones*, 20 S.E.2d 74, 77–78 (Ga. 1942)). Assignment "vest[s] in the assignee the rights of the assignor," *id.*, whereas power of attorney typically "merely authorizes another agent to do what the grantor principal could do with respect to the recited subject matter," *Godwin v. Mizpah Farms, LLLP*, 766 S.E.2d 497, 507 (Ga. Ct. App. 2014) (cleaned up). With a "limited power of attorney," Doc. 22 at 4 (App. 227), Selene is authorized to service the loan—nothing further. It

46

does not fully stand in the lender's shoes and assume all the "rights and obligations" outlined in the contract, *S. Telecom, Inc. v. TW Telecom of Georgia L.P.*, 741 S.E.2d 234, 236 (Ga. Ct. App. 2013) (quotation marks omitted), including the notice-and-cure provision. This Court can conclude that Selene is not an assign on the basis of these materials alone.[8]

### B. Even if Selene is a valid assign, the notice-and-cure provision does not apply to assigns.

Even assuming that Selene is an assign of the lender, it still cannot enforce the notice-and-cure provision because the contract explicitly declines to extend the notice-and-cure provision to assigns. The district court ignored Section 13 of the mortgage contract, which prevents contractual assignees from invoking Section 20, the paragraph that contains the notice-and-cure provision. Section 13 states: "The covenants and agreements of this Security Instrument shall bind (*except as provided in Section 20*) and benefit the successors and assigns of Lender."

---

[8] To the extent this Court concludes that these documents leave the relationship between Selene and the lender ambiguous, it should reverse the Court's dismissal and remand so that discovery can enable the parties to produce evidence concerning the relationship between Selene and the lender.

Doc. 11-3 at 8 (App. 071) (emphasis added). This language must be "afforded its literal meaning," *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 794 (Ga. 2001), which—even assuming that Selene is a valid assign to the lender—suggests Section 20's notice-and-cure provision does not "bind . . . and benefit" assigns. But even if this Court concludes that Section 13's carve-out is ambiguous, that ambiguity should be resolved in favor of Ms. Whitfield, because Georgia law counsels that contractual ambiguity should generally be construed against the drafter. *See* Ga. Code § 13-2-2 (5); *In re Estate of McKitrick*, 326 Ga. App. 702, 706 (2014).

### C.    Ms. Whitfield's claims do not arise out of the mortgage contract.

Even if Selene were an assign and even if an assign can invoke the notice-and-cure provision, this Court should *still* reverse because Ms. Whitfield's claims fall outside the scope of her mortgage agreement. Her claims are grounded in consumer-protection law and challenge the lawfulness of Selene's false representations; they are entirely irrelevant to the terms and conditions of her mortgage. By its terms, the deed requires pre-suit notice for any "alleged breach" that "arises from the other party's actions pursuant to" the contract or "alleges that the other party has breached any provision of, or any duty owed by any reason of"

48

the contract. Doc. 11-3 at 9 (App. 072). Ms. Whitfield does not assert that Selene's debt-collection practices here contravene a contractual provision; instead, she argues that Selene's practices violate federal and state statutes. Both the FDCPA and FBPA create independent duties Selene is obligated to follow, separate and apart from the obligations outlined in the deed.

Under Georgia law, determining whether a claim "arises from" a contract requires asking whether "independent of that [contract], the claim could still exist." *USMoney Source, Inc. v. Am. Int'l Speciality Lines Ins. Co.*, 288 F. App'x 558, 560 (11th Cir. 2008). Georgia courts "apply the 'but for' test traditionally used to determine cause-in-fact for tort liability" to evaluate whether a claim arises from a contract. *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 609 F. App'x 578, 588 (11th Cir. 2015) (quotation marks omitted); *see also Bahamas Sales Associate, LLC v. Byers*, 701 F.3d 1335, 1340–41 (11th Cir. 2012) ("A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of contractual duties.'") (quotation marks omitted); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related—with at least some

49

directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract[.]"). In other words: Claims arise out of a contract when, but for that agreement, there could be no claim.

Ms. Whitfield sues under statutory rights of action that confer duties independent from any requirements stated in the mortgage agreement. Her claims do not arise but-for the contract; they arise but-for Selene's unlawful debt collection practices, which are neither sanctioned nor anticipated by the agreement. This Court's analysis of whether the letter is misleading as a matter of law, *see* § II, *supra*, evidences as much: Determining whether the debt-collection letter is misleading does not require an examination of the terms of the deed itself.

The district court read this but-for standard far too broadly, erroneously relying on the contract's authorization of acceleration to conclude that Ms. Whitfield's claims arise from the deed. *See* Doc. 23 at 20 (App. 260). Under the court's reasoning, Ms. Whitfield's claims "arise" from the contract because the contract itself authorizes Selene to send debt-collection notices and the letter uses language from the agreement.

*See id.*; *see also* Doc. 11-3 at 9 ¶ 22 (App. 072) (stating that the lender "shall give notice to Borrower prior to acceleration following" default). But the language cited by the court does not confer any additional legal rights beyond the contract; indeed, Ms. Whitfield is entitled to sue for unlawful debt-collection practices whether those practices arise from actions authorized by the acceleration letter or not.

Any other reading of the agreement impermissibly broadens the reach of contractual exhaustion clauses like the one presented here. "Requiring a direct relationship between the claim and the contract is necessary because, [i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, it would have no limiting purpose because really, universally, relations stop nowhere." *Bahamas Sales Associate, LLC*, 701 F.3d at 1341 (quotation marks omitted; alterations in original). The court's opinion suggests that *any* possible claim between Ms. Whitfield and Selene requires pre-suit notice because *any* interaction between them "arises" by virtue of their contractual relationship. So, under the court's holding, a debt collector who suffered an injury while visiting a borrower because of the borrower's negligent maintenance of their property would be required to abide by the contract's notice-and-

51

cure provision before naming the borrower as a defendant in a state tort, on the rationale that the collector was injured only because they were "authorize[d]" to collect the borrower's debt. *See* Doc. 23 at 20 (App. 260). Or a borrower who had personal information leaked in a data breach because of the lender's negligent maintenance of consumer data would be required to provide notice prior to suing under federal and state privacy laws. Neither of these situations "arise" from or relate to the contract, and both—like Ms. Whitfield's debt-collection claims—are cognizable absent the agreement.

Numerous district courts within the Eleventh Circuit have agreed, concluding that claims "aris[ing] directly from alleged violations of consumer protection statutes" are not equivalent to a "breach of the mortgage or any duty arising therefrom" and therefore not subject to contractual notice-and-cure requirements. *See Velez v. Bank of America, NA*, No: 8:18-cv-88-T-35SPF, 2020 WL 13596305, at *4 (M.D. Fla. Sept. 22, 2020); *Foster v. Green Tree Servicing, LLC*, No. 8:15-CV-1878-T-27MAP, 2017 WL 5151354, at *2–3 (M.D. Fla. Nov. 3, 2017) (finding that an identical notice-and-cure provision was "inapplicable to Plaintiff's FDCPA and FCCPA claims" because the claims arose from "violations of

52

consumer protection statutes"); *Colon v. Nationstar Mortg., LLC*, No. 1:15-CV-22961-UU, 2015 WL 7422598, at *2 (S.D. Fla. Nov. 17, 2015) (finding that an identical notice-and-cure provision could not be read to extend to claims "concerning a consumer protection statute that is not directly connected to the performance of the duties in the Mortgage"); *Belcher v. Ocwen Loan Servicing, LLC*, No. 8:16-CV-690-T-23AEP, 2016 WL 7243100, at *4 (M.D. Fla. Dec. 15, 2016) (finding that FDCPA and FCCPA claims were "independent from the requirement under the mortgage agreement to give pre-suit notice"); *Lamothe v. Freedom Mortgage Corp.*, No. 18-cv-61448, 2018 WL 5631172, at *4 (S.D. Fla. Oct. 31, 2018) (finding that RESPA claims did "not arise as a result of a breach of any provision of the mortgage or a duty owed within the mortgage itself"); *Garay v. Select Portfolio Servicing Inc.*, No. 1:19-CV-23323-JLK, 2020 WL 10823745, at *3 (S.D. Fla. Aug. 7, 2020), *report and recommendation adopted*, No. 1:19-CV-23323-JLK, 2020 WL 10823759 (S.D. Fla. Aug. 31, 2020) (holding that pre-suit notice-and-cure provisions in a mortgage do not apply to FCCPA claims where borrower alleged that servicer improperly charged processing fees on payments); *St. Breux v. U.S. Bank, Nat. Ass'n*, 919 F. Supp. 2d 1371, 1376 (S.D. Fla. 2013)

53

(finding that a TILA claim was "not directly related to the mortgage, so the notice and cure provision does not apply").[9]

Other out-of-circuit courts, analyzing notice-and-cure provisions functionally identical to the one here, concluded that the provision's requirements do not extend to FDCPA claims. *See Desimone v. Select Portfolio Servicing, Inc.*, No. 20-CV-3837, 2024 WL 4188851, at \*5, \*8 (E.D.N.Y. Sept. 13, 2024); *Richards v. NewRez LLC*, No. 20-CV-1282, 2021 WL 1060286, at \*21–22 (D. Md. Mar. 18, 2021); *Schmidt*, 2011 WL 1597658, at \*3–4.

The weight of authority demonstrates that Ms. Whitfield's claims have an independent, non-contractual basis, and pre-suit notice is not required. Under Georgia law, Ms. Whitfield's claims are independent of the contract, and she was therefore not required to provide pre-suit

---

[9] District courts around the country have likewise held that notice-and-cure provisions in mortgage agreements do not apply "where purely statutory rights are being enforced." *Harrington v. Fay Servicing*, LLC, No. 18-C-06467, 2019 WL 4750140, at \*5 (N.D. Ill. Sept. 30, 2019); *see also McShannock v. JP Morgan Chase Bank N.A.*, 354 F.Supp.3d 1063, 1072 (N.D. Cal. 2018), *rev'd on other grounds*, 976 F.3d 881 (9th Cir. 2020); *Gerber v. First Horizon Home Loans Corp.*, No. C05-1554P, 2006 WL 581082, at \*3 (W.D. Wash. Mar. 8, 2006); *Taub v. World Fin. Network Bank*, 950 F. Supp. 2d 698, 701–03 (S.D.N.Y. 2013).

54

notice, presenting an additional and independent reason requiring reversal.

### D.  Judicial estoppel prevents Selene from arguing that it is a party or assign to the agreement.

The doctrine of judicial estoppel also precludes Selene from claiming it is an assign to the mortgage contract because in other cases, it has argued the opposite. Judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation omitted). For a court to apply judicial estoppel, a two-part test must be satisfied: "whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were 'calculated to make a mockery of the judicial system.'" *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017) (citing *Burnes v. Pemco Aeroplex*, 291 F.3d 1282, 1285 (11th. Cir. 2002)). Here, both parts are satisfied: Selene's prior inconsistent position that it is not a party to mortgage contracts bars it from arguing that it is an assign to this specific contract.

*First*, in other cases, Selene—to dismiss breach-of-contract claims against it—has successfully argued that as a loan servicer, it is *not* a

55

party to mortgage contracts. *See* Docs. 20-1 at 11, 20-2 at 8 n.2, 20-3 at 7 (describing Selene as the "servicing agent of the lender") (App. 154, 172 n.2, 183); *see also Aubee v. Selene Fin., L.P.*, 56 F.4th 1, 9 (1st Cir. 2022) (affirming dismissal of claim against Selene because "it was not a party to the mortgage contract and therefore was not bound by its notice provisions"); *Silvester v. Selene Fin., LP*, No. 18-CV-02425, 2021 WL 861080, at *8 (S.D.N.Y. Mar. 8, 2021) (dismissing breach of contract claim because Selene "was not a party to the Mortgage, and simply acting as the loan servicer is insufficient to create privity of contract between the parties"). Yet here, Selene has contended that it *is* entitled to the benefits of the notice-and-cure provision as the lender's assign, Doc. 17-1 at 11–12 (App. 094–95), requiring this Court to read "servicer" into the term "lender" and necessarily making it a party to the contract. Selene cannot have it both ways: claiming it should not have to give notice to borrowers because it is not a party to the original mortgage contracts, while arguing that borrowers ought to give notice to Selene since it is an assign.

The district court erred in its analysis of this prong. It held that judicial estoppel did not apply because Selene is "not taking a contrary position to its prior arguments that it is not a ***party*** to similar Security

56

Deeds. It is simply arguing that it is an ***assignee*** of the Security Deed." Doc. 23 at 19 n.13 (App. 259 n.13) (emphasis in original). But that is precisely the role of a contractual assignee: In order for Selene to invoke the notice-and-cure provision in the deed, it has to "'stand[] in the shoes' of the assignor," *S. Telecom, Inc.*, 741 S.E.2d at 237, and be considered the equivalent of the "lender" for purposes of the provision, making it a party to the agreement.

*Second*, Selene's incompatible positions are "intended to make a mockery of the judicial system." *Slater*, 871 F.3d at 1181. This prong is fulfilled when a court, examining the totality of circumstances, finds that a party "intended to manipulate the judicial system to his advantage." *Id*. at 1186. Here, Selene has staked out an inconsistent position purely to "derive an unfair advantage." *New Hampshire*, 532 U.S. at 751. Selene's strategy—changing positions to allow it, but not plaintiffs, to file suit without notice—is precisely the gamesmanship that judicial estoppel was designed to prevent. Thus, to protect "the essential integrity of the judicial process," *id*. at 750, Selene should be estopped from enforcing the notice-and-cure provision here.

57

**E.    Enforcement of the notice-and-cure provision is contrary to public policy.**

Finally, enforcement of the notice-and-cure provision undermines the FDCPA's public policy goals of preventing abusive debt collection practices. Contractual provisions that waive statutory rights are invalid where they contravene statutory policy. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945); *see also, e.g., Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived, because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."). Enforcement of the notice-and-cure provision here undermines the FDCPA's goals because it functions as a prospective waiver of Ms. Whitfield's rights to (1) be free from deceptive debt-collection tactics, and (2) pursue statutory remedies on behalf of a class.

*First*, by requiring Ms. Whitfield to notify Selene of its violation of the FDCPA in its letter, and then wait for corrective action—which may or may not occur—the contractual exhaustion provision functions as a roadblock to seeking relief, impermissibly shortening the already limited one-year statute of limitations under the statute. *See* 15 U.S.C. § 1692k(d); *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 831 (6th

58

Cir. 2019) (stating that a "shortened [statute of] limitation[s] period equates to a substantive waiver"); *Boaz v. FedEx Customer Info. Servs.*, 725 F.3d 603, 606–07 (6th Cir. 2013).

*Second*, the FDCPA's statutory structure contemplates relief through a class device, and the notice-and-cure provision eliminates that possibility as a practical matter. The statute limits statutory damages recovery per individual to $1,000, per violation, *see* 15 U.S.C. § 1692k(a)(2)(A) and caps class-wide statutory damages recovery to the lesser of $500,000 or 1 percent of the debt collector's net worth, *id.* § 1692k(a)(2)(B)(ii). The individual $1,000 damages cap will almost always be quickly overwhelmed by the cost of hiring an attorney and prosecuting a claim against a lender or servicer subject to the FDCPA, and the FDCPA's text therefore contemplates and allows for recovery on a classwide basis. *See id.* § 1692k(b)(2) (listing factors to consider in assessing classwide damages); Philip White, *Annotation, Satisfaction of Commonality Requirement for Class Actions Under Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692 et seq.*, 54 A.L.R. Fed. 2d 479 Art. 1 § 2 (2011) (stating that through the FDCPA's statutory text, "Congress intended that the class action mechanism was appropriate where there

59

are many plaintiffs with small claims who would be unlikely to bring a solo suit"); *cf. Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Requiring each class member to abide by a notice-and-cure provision will pose an enormous burden on plaintiffs attempting to establish that their common questions predominate over any individual questions, *see* Fed. R. Civ. P. 23(b)(3), and will severely limit any plaintiffs' attorney's ability to ensure that such provisions have been complied with and satisfied within the one year prior to filing suit, *see* 15 U.S.C. § 1692k(d); *see also* Doc. 11-3 at 9 ¶ 20 (App. 072) (requiring each party to notice-and-cure before they can "commence, join, or be joined to any judicial action," "as either an individual litigant or the member of a class"). The notice-and-cure provision effectively eliminates a procedural right guaranteed by the FDCPA and is unenforceable for that reason.

Accordingly, in line with Congress's express aim of empowering the public to hold predatory debt collectors accountable through private suits, this Court should refuse to enforce the notice-and-cure provision.

60

## CONCLUSION

For these reasons, this Court should reverse the district court's dismissal and conclude that (1) Ms. Whitfield has sufficiently alleged concrete harms, (2) she has sufficiently pled that the letter is misleading, and (3) she is not required to provide notice under the notice-and-cure provision.

Dated: March 13, 2025          Respectfully submitted,

/s/ *Lucia Goin*
Lucia Goin
Leah M. Nicholls
PUBLIC JUSTICE*
1620 L St. NW, Ste. 630
Washington, DC 20036
(202) 470-1061
lgoin@publicjustice.net
lnicholls@publicjustice.net

Scott C. Harris
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com

*Counsel for Plaintiff-Appellant*

---

* Public Justice thanks Brian Xu, a law student at Stanford University Law School, for his substantial contributions to this brief.

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 12,605 words. This document complies with the typeface and type-style requirements of Fed. Rs. App. P. 32(a)(5) and 32(a)(6) because it has been prepared using a 14-point proportionally spaced font that uses serifs, and it is set in a plain, roman style, excepting italics occasionally used for emphasis.

Dated: March 13, 2025      /s/ *Lucia Goin*
Lucia Goin

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I certify that on March 13, 2025, the foregoing was filed electronically with the Clerk of Court through CM/ECF, which will send notification of this filing to counsel of record in this matter.

Dated: March 13, 2025          /s/ *Lucia Goin*
                               Lucia Goin

                               *Counsel for Plaintiff-Appellant*